UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| NANCY VALENCIA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW SAUL, Commissioner of the Social Security Administration,<br><br>    Defendant. | Case No. CV 19-06109-AS<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On July 16, 2019, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On December 12, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket

Entry Nos. 15-16). On April 8, 2020, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 19).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 19, 2016, Plaintiff, formerly employed as a personal banker and as a bank teller supervisor (see AR 43-44, 164, 170-72, 178-80), filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability since November 7, 2014. (See AR 20, 142-43). Plaintiff's applications were denied initially on September 15, 2016. (See AR 74-78).

On June 19, 2018, the Administrative Law Judge ("ALJ"), Paul Coulter, heard testimony from Plaintiff, represented by counsel, and vocational expert Alan Ey. (See AR 40-51). On July 25, 2018, the ALJ issued a decision denying Plaintiff's requests for benefits. (See AR 20-30). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 7, 2014. (AR 22). At step two, the ALJ determined that Plaintiff had the following severe impairments "fibromyalgia; bilateral lower extremity polyneuropathy and peripheral neuropathy; migraine headaches; asthma; carpal tunnel syndrome; [and] right de Quervain

tenosynovitis". (AR 22).[1] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 23).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[2] and concluded that Plaintiff could perform sedentary work[3] with the following limitations: can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand or walk for about 6 hours in an 8-hour workday; can sit for about 6 hours in an 8-hour workday; can perform postural activities occasionally, but cannot climb ladders, ropes or scaffolds; can perform right fingering frequently; and must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust and gases. (AR 23-29).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a customer service representative as generally performed. (AR 29-30). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30).

---

[1] The ALJ found that Plaintiff's other impairments -- history of angioedema, history of bell's palsy, history of left foot reconstruction -- were non-severe, and that Plaintiff's complaint of a history of anxiety was not a medically determinable mental impairment. (AR 23).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 20, 2019. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Id. As a result, "[w]here the evidence can reasonably support either affirming or reversing [the ALJ's] decision, [a court] may not substitute [its] judgment for that of the [ALJ]." Id. at 1010 (citations omitted).[4]

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred in failing to properly consider (1) the opinion of Plaintiff's treating physician; and (2)

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

Plaintiff's subjective symptom testimony. (See Joint Stip. at 4-10, 19-25, 32-33).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second claim of error.

**A. The ALJ Failed To Provide Clear and Convincing Reasons For Rejecting Dr. Su's Opinion**

Plaintiff asserts that the ALJ failed to properly reject the opinion of her treating physician, Dr. Su. (See Joint Stip. at 4-10, 19-20). Defendant asserts that the ALJ properly evaluated Dr. Su's opinion. (See Joint Stip. at 11-19).

1. <u>Legal Standard</u>

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).[5] "Generally, a treating physician's opinion

---

[5] Since Plaintiff filed her applications before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 applies. For applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c would apply. 20 C.F.R. § 404.1520c and 416.920c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a); <u>L.R. v. Saul</u>,
(continued...)

5

carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d at 654; see also 20 C.F.R. § 404.1527(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir 2008); Lester, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester, supra. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

---

[5] (...continued)
2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); Golightly v. Saul, 2020 WL 1916874, at *6 n. 5 (D. S.C. April 7, 2020); see also 82 Fed. Reg. 5844, at 5852 (January 18, 2017); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, an ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

2. Dr. Su

Tien-I Karleen Su, M.D., at the Amicus Arthritis and Osteoporosis Center, Inc. - Rheumatology, treated Plaintiff from October 13, 2016 through January 11, 2018. (See AR 360-62 [October 13, 2016: diagnosing, inter alia, "[f]ibromyalgia associated with short term memory deficits and polyarthralgia"][6], 357-59 [December 9, 2016: same diagnosis, plus opiate use for chronic pain], 354-56 [March 16, 2017: same diagnoses], 351-53 [June 22, 2017: same diagnoses, plus "[u]nrestful sleep associated with fatigue" and "bilateral shoulder pain, left worse"], 348-50 [September 29, 2017: same fibromyalgia and unrestful sleep diagnoses, plus "bilateral shoulder pain, related to fibromyalgia," "2nd trimester intrauterine pregnancy" and discontinued opiate use in July 2017], 345-47 [January 11, 2018: same diagnoses, except "3rd trimester intrauterine pregnancy"]).

---

[6] Plaintiff was first diagnosed with fibromyalgia on November 30, 2015. (See AR 24, 254-55).

On November 21, 2016, Dr. Su completed a check-the-box form entitled "Medical Opinion re: Ability to Do Work-Related Activities (Physical)," (see AR 342-44), indicating that Plaintiff could do the following: lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk (with normal breaks) less than 2 hours in an 8-hour workday; sit less than 2 hours in an 8-hour workday; can stand for 5 minutes and sit for 10 minutes before needing to change positions; needs to walk around every 45 minutes for 5 minutes; needs to shift at will from sitting or standing/walking; and needs to lie down at unpredictable intervals every 3 to 4 hours. (AR 342-43). Dr. Su described the medical findings supporting these limitations as "Severe fibromyalgia with constant pain not adequately responding to conventional therapy including prescription meds. Peripheral neuropathy." (AR 343). Dr. Su checked boxes indicating that Plaintiff was able to twist and climb stairs occasionally, never stoop (bend), crouch and climb ladders, and was unable to perform the physical functions of reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), feeling or pushing/pulling due to severe pain and paresthesia. (Id.). Dr. Su described the medical findings supporting these limitations as laboratory, electromagnetic testing, and clinical assessment. (Id.). Dr. Su also indicated that Plaintiff needs to avoid all exposure to hazards (machinery, heights, etc.) and fumes, odors, dusts, gases, poor ventilation, etc., concentrated exposure to extreme cold, extreme heat and noise, and even moderate exposure to wetness, since such exposures "cause flare-up of patient's fibromyalgia pain." (AR 344). Dr. Su stated that Plaintiff's ability to perform her job duties could be

affected by her memory loss related to fibromyalgia and difficulty concentrating and that Plaintiff had difficulty writing and typing for prolonged periods due to her pain and paresthesia. (Id.). Dr. Su also stated that Plaintiff's impairments likely would cause Plaintiff to be absent from work more than three days a month. (Id.).

### 3. The AlJ's Findings

The ALJ gave "little weight" to Dr. Su's opinion, finding it to be: (1) inconsistent with the medical evidence, specifically, clinical records reflecting normal sensory and motor control findings and the absence of findings confirming atrophy, gait abnormalities or mobility issues; (2) inconsistent with the October 2017 statements of another treating physician, Munther Hijazin, M.D., about Plaintiff's condition; and (3) inconsistent with Dr. Su's own statements in and after December 2016 about Plaintiff's condition. (See AR 25-26).

Since Dr. Su's opinion about Plaintiff's limitations was not contradicted by the opinions of other physicians,[7] the "clear and convincing" standard applies to the ALJ's rejection of Dr. Su's opinion in these areas. See Trevizo, 871 F.3d at 675.

---

[7] The ALJ stated he was not considering the September 14, 2016 opinion of the State Agency medical consultant, S. King, SDM (see AR 57-59, 67-69) in determining Plaintiff's RFC. (AR 26)

As set forth below, the ALJ failed to provide clear and convincing reasons for rejecting Dr. Su's Opinion.

4. <u>Analysis</u>

The ALJ found Dr. Su's opinion that Plaintiff was unable to sustain even the minimal demands of sedentary work to be inconsistent with the medical record which reflected normal examination findings concerning Plaintiff's gait, atrophy, sensory, motor, and extremities (AR 25). See Dr. Hijazin's examinations on August 31, 2016 [AR 462], January 26, 2107 [AR 464], May 26, 2107 [AR 466], October 5, 2017 [AR 468], and March 1, 2018 [AR 470]; and Dr. Constant Chan's progress notes on August 4, 2015 [AR 510-11], August 13, 2015 [AR 508-09], November 30, 2015 [AR 506-07], January 5, 2016 [AR 504-05], February 29, 2016 [AR 502-03], March 1, 2016 [AR 500-01], March 22, 2016 [AR 498-99], and December 6, 2016 [AR 493-96].

Fibromyalgia, "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue," is a recognized medical condition that cannot be demonstrated by diagnostic tests or other objective medical evidence. See <u>Benecke v. Barnhart</u>, 379 F.3d 587, 589-90 (9th Cir. 2004)(Typical fibromyalgia symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."; Fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms" because "there are no laboratory tests to confirm the diagnosis."); <u>Revels v. Berryhill</u>, 874

F.3d 648, 656-57 (9th Cir. 2017)("[T]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain."; "[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs."); see also Social Security Ruling ("SSR") 12-2p.[8] Fibromalgia sufferers have normal muscle strength, sensory functions, and reflexes, normal appearing joints, no objective joints swelling, and "an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Revels, 874 F.3d at 656 (citations omitted).

Dr. Su provided Plaintiff with long-term treatment for diagnosed fibromyalgia -- which the ALJ found to be a severe impairment (AR 22). All of Dr. Su's physical examinations revealed Plaintiff had most if not all fibromyalgia tender points. (See AR 426 [October 13, 2016: 16/18 tender points for fibromyalgia], 423 [December 9, 2016: same], 420 [March 16, 2017: same], 417 [June 22, 2017: same], 413 [September 29,

---

[8] SSR 12-2p, which was issued in 2012, recognized fibromyalgia as a valid "basis for a finding of disability." SSR 12-2p, at *2. Prior to this ruling, there was considerable debate about whether a fibromyalgia impairment could render a claimant disabled for Social Security purposes. See Revels, 874 F.3d at 656 (describing SSR 12-2p as a "sea-change" in the law).

There are two acceptable sets of criteria for diagnosing fibromyalgia, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. See SSR 12-2p, at *2-*3; Revels, supra. These criteria basically involve finding that the patient has experienced widespread pain, the manifestation of particular symptoms associated with fibromyalgia -- such as fatigue, depression, or the presence of certain points of tenderness -- and the absence of other disorders that would account for the pain. See SSR 12-2p, at *2-*3; Revels, supra. ALJs are urged to consider "a longitudinal record whenever possible" because "the symptoms of fibromyalgia 'wax and wane,' and . . . a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p)).

2017: 18/18 tender points for fibromyalgia], 410 [January 11, 2018: same). Since the physical examination findings of normal gait, sensory functions, motor and extremities "are perfectly consistent with debilitating fibromyalgia," Revels, 874 F.3d at 666, inconsistency with the medical record was not a clear and convincing reason for discounting Dr. Su's opinion.

The ALJ also discounted Dr. Su's opinion because it was inconsistent with Dr. Hijazin's statement, on October 5, 2017, that Plaintiff "is doing well" and that Plaintiff "is off all medication" (AR 469). (AR 25-26).

The ALJ seems to have taken Dr. Hijazin's statement that Plaintiff "is doing well" out of context. See Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in the context of the overall diagnostic picture he draws."). Although on October 5, 2017, Dr. Hijazin, a neurologist at Prentice, Mitri, Hijazin Neurological Associates, noted that Plaintiff had been diagnosed with fibromyalgia, it appears that Dr. Hijazin was not treating Plaintiff's fibromyalgia. (See AR 468-69; see also AR 462-67, 470-71, 360 [Dr. Su's October 13, 2016 treatment note: "Sees Dr. Hijazin for neuropathy."]). In contrast to Dr. Hijazin's description about Plaintiff's condition, Dr. Hijazin's October 5, 2017 treating note, as well as Dr. Su's October 13, 2016 treating note reflect that Plaintiff was in pain. (See AR 468, 360-61). Moreover, none of Dr. Hizajin's other treating notes state that Plaintiff was doing well. (See AR 460-67, 470-71 [June 2, 2016, August 31, 2016, January 26, 2017, May 26, 2017, and March 1, 2018]). See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th 2014)(improper for an ALJ to

cherry-pick from a physician's "characterizations of [the claimant's] rapport and demeanor").

In addition, contrary to the ALJ's assertion (see AR 25-26), Dr. Hizajin's October 5, 2017 statement that Plaintiff was "off all medication" was not related to her ability to perform exertional activities. Rather, as Dr. Hizajin noted, Plaintiff was off medication because she was pregnant. (See AR 468; see also AR 348 [notations in Dr. Su's September 29, 2017 treating notes indicate that Plaintiff had stopped taking medications for fibromyalgia since July 2017, was presently only taking prenatal vitamins, and that Plaintiff's discontinuance of her medications had caused her severe pain], 346 [notation in Dr. Su's January 11, 2018 treating notes that after Plaintiff delivers her baby she would like to resume her medications for her fibromyalgia). Therefore, inconsistencies with Dr. Hizajin's October 5, 2017 statement was not a clear and convincing reason for discounting Dr. Su's opinion.

The ALJ also gave Dr. Su's November 2016 opinion little weight because Dr. Su's statement that Plaintiff was not responding to conventional therapy, including medication (see AR 343 [November 21, 2016: "Severe fibromyalgia with constant pain not adequately responding to conventional therapy including prescription med[ication]"] was contradicted by Dr. Su's statements, beginning in December 2016, that Plaintiff's fibromyalgia was stable and partially relieved with Cymbalta. (AR 26). See AR 358 [December 9, 2016: Fibromyalgia "[p]ersistent but stable. Partial relief with Cymbalta."], 355 [March 16, 2017: Fibromyalgia "[p]ersistent but stable. Partial relief with

13

Cymbalta."], 352 [June 22, 2017: Fibromyalgia "[p]ersistent. Partial relief with Cymbalta and gabapentin."].

Inconsistencies in a treating physician's reports can serve as a valid basis to discount the treating physician's opinion. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). However, there was no contradiction between Dr. Su's November 21, 2016 statement that Plaintiff's fibromyalgia was "not adequately responding to conventional therapy, including prescription med[ication]" and Dr. Su's post-November 21, 2016 statements that Plaintiffs fibromyalgia was "persistent but stable" and that Plaintiff obtained partial relief with Cymbalta. Prior to Dr. Su's November 21, 2016 statement, there was no evidence in the record that Plaintiff's fibromyalgia adequately responded with treatment, including medication. (See e.g., AR 304-06, 321-22, 327-28, 360-62). Since Dr. Su prescribed Cymbalta to Plaintiff on October 13, 2016 (AR 361), Dr. Su would not have known how Plaintiff responded to Cymbalta until December 9, 2016, the next date on which Dr. Su treated Plaintiff (see AR 357-59). Moreover, as Plaintiff asserts (see Joint Stip. at 8), Dr. Su's post-November 21, 2016 statements that Plaintiff's fibromyalgia was "stable" and that Plaintiff got partial relief from Cymbalta does not, in isolation, demonstrate that Plaintiff was adequately responding to conventional therapy, including medication. Accordingly, this was not a clear and convincing reason, supported by substantial evidence in the record, for giving Dr. Su's opinion little weight.

//
//
//

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly reject Plaintiff's treating physician's opinion, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

//
//
//

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 6, 2020

                                                /s/
                                       ALKA SAGAR
                        UNITED STATES MAGISTRATE JUDGE